TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
ANIL J. ANTONY (Cal. Bar No. 258839)
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section
DEVON MYERS (Cal. Bar No. 240031)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6579/0649
    Facsimile: (213) 894-2927
    E-mail:   anil.j.antony@usdoj.gov
              devon.myers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:19-CR-00380-VAP-25 |
|      Plaintiff, | PLEA AGREEMENT FOR DEFENDANT EMMANUEL ONYEKA UZOKA |
|         v. | |
| EMMANUEL ONYEKA UZOKA,<br>  aka "Emmanuel Mansion,"<br>  aka "Mansion,"<br>  aka "Son of God,"<br>  aka "Ezirim Uzoma," | |
|      Defendant. | |

    1.   This constitutes the plea agreement between defendant EMMANUEL ONYEKA UZOKA, also known as ("aka") "Emmanuel Mansion," aka "Mansion," aka "Son of God," aka "Ezirim Uzoma," ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state,

1  local, or foreign prosecuting, enforcement, administrative, or
2  regulatory authorities.

3                        DEFENDANT'S OBLIGATIONS

4     2.   Defendant agrees to:

5          a.   At the earliest opportunity requested by the USAO and
6  provided by the Court, appear and plead guilty to Count One of the
7  Indictment in United States v. EMMANUEL ONYEKA UZOKA, Case No. 2:19-
8  CR-00380-VAP-25, which charges defendant with Conspiracy to Engage in
9  Money Laundering in violation of 18 U.S.C. § 1956(h).

10         b.   Not contest facts agreed to in this agreement.

11         c.   Abide by all agreements regarding sentencing contained
12  in this agreement.

13         d.   Agree that all court appearances, including his change
14  of plea hearing and sentencing hearing, may proceed by video-
15  teleconference ("VTC") or telephone, if VTC is not reasonably
16  available, so long as such appearances are authorized by Order of the
17  Chief Judge 20-043 or another order, rule, or statute.  Defendant
18  understands that, under the United States Constitution, the United
19  States Code, and the Federal Rules of Criminal Procedure (including
20  Rules 11, 32, and 43), he may have the right to be physically present
21  at these hearings.  Defendant understands that right and, after
22  consulting with counsel, voluntarily agrees to waive it and to
23  proceed remotely.  Defense counsel also joins in this consent,
24  agreement, and waiver.  Specifically, this agreement includes, but is
25  not limited to, the following:

26         i.   Defendant consents under Section 15002(b) of the
27  CARES Act to proceed with his change of plea hearing by VTC or
28  telephone, if VTC is not reasonably available.

                                2

1           ii.   Defendant consents under Section 15002(b) of the

2    CARES Act to proceed with his sentencing hearing by VTC or telephone,

3    if VTC is not reasonably available.

4           iii. Defendant consents under 18 U.S.C. § 3148 and

5    Section 15002(b) of the CARES Act to proceed with any hearing

6    regarding alleged violations of the conditions of pretrial release by

7    VTC or telephone, if VTC is not reasonably available.

8        e.   Appear for all court appearances, surrender as ordered

9    for service of sentence, obey all conditions of any bond, and obey

10   any other ongoing court order in this matter.

11       f.   Not commit any crime; however, offenses that would be

12   excluded for sentencing purposes under United States Sentencing

13   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

14   within the scope of this agreement.

15       g.   Be truthful at all times with the United States

16   Probation and Pretrial Services Office and the Court.

17       h.   Pay the applicable special assessment at or before the

18   time of sentencing unless defendant has demonstrated a lack of

19   ability to pay such assessments.

20       i.   Complete the Financial Disclosure Statement on a form

21   provided by the USAO and, within 30 days of defendant's entry of a

22   guilty plea, deliver the signed and dated statement, along with all

23   of the documents requested therein, to the USAO by either email at

24   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

25   Litigation Section at 300 N. Los Angeles St., Suite 7516, Los

26   Angeles, CA 90012.

27       j.   Authorize the USAO to obtain a credit report upon

28   returning a signed copy of this plea agreement.

3

1    k.    Consent to the USAO inspecting and copying all of

2 defendant's financial documents and financial information held by the

3 United States Probation and Pretrial Services Office.

4    3.    Defendant further agrees to cooperate fully with the USAO,

5 the Federal Bureau of Investigation ("FBI"), and, as directed by the

6 USAO, any other federal, state, local, or foreign prosecuting,

7 enforcement, administrative, or regulatory authority.  This

8 cooperation requires defendant to:

9    a.    Respond truthfully and completely to all questions

10 that may be put to defendant, whether in interviews, before a grand

11 jury, or at any trial or other court proceeding.

12    b.    Attend all meetings, grand jury sessions, trials or

13 other proceedings at which defendant's presence is requested by the

14 USAO or compelled by subpoena or court order.

15    c.    Produce voluntarily all documents, records, or other

16 tangible evidence relating to matters about which the USAO, or its

17 designee, inquires.  This includes a white Nokia cellphone that is in

18 the possession of defendant's counsel, Cathy Alterman.  Defendant

19 further freely and voluntarily consents to the FBI searching that

20 cellphone for evidence of violations of United States criminal laws

21 -- specifically including violations of 18 U.S.C. §§ 1956(h)

22 (Conspiracy to Engage in Money Laundering); 1349 (Conspiracy to

23 Commit Wire Fraud, Mail Fraud, and Bank Fraud); 1343 (Wire Fraud);

24 § 1344 (Bank Fraud); 1956 (Money Laundering); 1957 (Engaging in

25 Monetary Transactions in Property Derived from Specified Unlawful

26 Activity); 1028A (Aggravated Identity Theft); and 2232(a)

27 (Destruction of Property to Prevent Seizure) -- and defendant waives

28

1    any claim that the search of that cellphone was conducted by the FBI

2    in violation of the Fourth Amendment.

3         4.   For purposes of this agreement: (1) "Cooperation

4    Information" shall mean any statements made, or documents, records,

5    tangible evidence, or other information provided, by defendant

6    pursuant to defendant's cooperation under this agreement; and

7    (2) "Plea Information" shall mean any statements made by defendant,

8    under oath, at the guilty plea hearing and the agreed to factual

9    basis statement in this agreement.

10                        THE USAO'S OBLIGATIONS

11        5.   The USAO agrees to:

12             a.   Not contest facts agreed to in this agreement.

13             b.   Abide by all agreements regarding sentencing contained

14   in this agreement.

15             c.   At the time of sentencing, move to dismiss the

16   remaining counts of the Indictment as against defendant.  Defendant

17   agrees, however, that at the time of sentencing the Court may

18   consider any dismissed charges in determining the applicable

19   Sentencing Guidelines range, the propriety and extent of any

20   departure from that range, and the sentence to be imposed.

21             d.   At the time of sentencing, provided that defendant

22   demonstrates an acceptance of responsibility for the offense up to

23   and including the time of sentencing, recommend a two-level reduction

24   in the applicable Sentencing Guidelines offense level, pursuant to

25   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

26   additional one-level reduction if available under that section.

27             e.   Except for criminal tax violations (including

28   conspiracy to commit such violations chargeable under 18 U.S.C.

§ 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1956(h) (Conspiracy to Engage in Money Laundering); 1349 (Conspiracy to Commit Wire Fraud, Mail Fraud, and Bank Fraud); 1343 (Wire Fraud); § 1344 (Bank Fraud); 1956 (Money Laundering); 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity); 1028A (Aggravated Identity Theft); and 2232(a) (Destruction of Property to Prevent Seizure) arising out of: (i) defendant's conduct described in the agreed-to factual basis set forth in paragraph 15 below; (ii) evidence obtained by the FBI during the searches of digital devices obtained on or about August 21 and 22, 2020, pursuant to search warrants; and (iii) evidence obtained by the FBI through a search of the white Nokia cellphone that defendant is surrendering to the FBI concurrent to signing this plea agreement. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

6.  The USAO further agrees:

a.  Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation

Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.    Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.    If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range

7

1   below that otherwise dictated by the sentencing guidelines, and to

2   recommend a term of imprisonment within this reduced range.

3                  DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

4        7.   Defendant understands the following:

5             a.   Any knowingly false or misleading statement by

6   defendant will subject defendant to prosecution for false statement,

7   obstruction of justice, and perjury and will constitute a breach by

8   defendant of this agreement.

9             b.   Nothing in this agreement requires the USAO or any

10  other prosecuting, enforcement, administrative, or regulatory

11  authority to accept any cooperation or assistance that defendant may

12  offer, or to use it in any particular way.

13            c.   Defendant cannot withdraw defendant's guilty plea if

14  the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

15  reduced guideline range or if the USAO makes such a motion and the

16  Court does not grant it or if the Court grants such a USAO motion but

17  elects to sentence above the reduced range.

18            d.   At this time, the USAO makes no agreement or

19  representation as to whether any cooperation that defendant has

20  provided or intends to provide constitutes or will constitute

21  substantial assistance.  The decision whether defendant has provided

22  substantial assistance will rest solely within the exclusive judgment

23  of the USAO.

24            e.   The USAO's determination whether defendant has

25  provided substantial assistance will not depend in any way on whether

26  the government prevails at any trial or court hearing in which

27  defendant testifies or in which the government otherwise presents

28  information resulting from defendant's cooperation.

1

## NATURE OF THE OFFENSE

2    8.   Defendant understands that for defendant to be guilty of

3   the crime charged in Count One, that is, Conspiracy to Engage in

4   Money Laundering, in violation of 18 U.S.C. § 1956(h), the following

5   must be true:

6         a.   There was an agreement between two or more persons:

7              i.   to conduct a financial transaction involving

8   property that represented the proceeds of wire fraud (in violation of

9   Title 18, United States Code, Section 1343), bank fraud (in violation

10  of Title 18, United States Code, Section 1344(2)) or mail fraud (in

11  violation of Title 18, United States Code, Section 1341), where

12  defendant knew that the property represented the proceeds of some

13  form of unlawful activity, and defendant knew that the transaction

14  was designed in whole or in part to conceal or disguise the nature,

15  location, source, ownership, or control of the proceeds; or

16             ii.  to transport, transmit, or transfer, or attempt

17  to transport, transmit, or transfer, from a place in the United

18  States to or through a place outside the United States, a monetary

19  instrument or funds, which defendant knew represented the proceeds of

20  some form of unlawful activity, and defendant knew that the

21  transaction was designed in whole or in part to conceal or disguise

22  the nature, location, source, ownership, or control of the proceeds

23  of wire fraud (in violation of Title 18, United States Code, Section

24  1343), bank fraud (in violation of Title 18, United States Code,

25  Section 1344(2)) or mail fraud (in violation of Title 18, United

26  States Code, Section 1341); or

27             iii. to knowingly engage or attempt to engage in a

28  monetary transaction in the United States in criminally derived

property that had a value greater than $10,000 and was, in fact, derived from wire fraud (in violation of Title 18, United States Code, Section 1343), bank fraud (in violation of Title 18, United States Code, Section 1344(2)) or mail fraud (in violation of Title 18, United States Code, Section 1341); and

b.   defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

<u>PENALTIES AND RESTITUTION</u>

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(h), as charged in the Indictment, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all

relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $220,337.68, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences,

1    including but not limited to revocation of probation, parole, or

2    supervised release in another case and suspension or revocation of a

3    professional license.  Defendant understands that unanticipated

4    collateral consequences will not serve as grounds to withdraw

5    defendant's guilty plea.

6         14.  Defendant and his counsel have discussed the fact that, and

7    defendant understands that, if defendant is not a United States

8    citizen, the conviction in this case makes it practically inevitable

9    and a virtual certainty that defendant will be removed or deported

10   from the United States.  Defendant may also be denied United States

11   citizenship and admission to the United States in the future.

12   Defendant understands that while there may be arguments that

13   defendant can raise in immigration proceedings to avoid or delay

14   removal, removal is presumptively mandatory and a virtual certainty

15   in this case.  Defendant further understands that removal and

16   immigration consequences are the subject of a separate proceeding and

17   that no one, including his attorney or the Court, can predict to an

18   absolute certainty the effect of his conviction on his immigration

19   status.  Defendant nevertheless affirms that he wants to plead guilty

20   regardless of any immigration consequences that his plea may entail,

21   even if the consequence is automatic removal from the United States.

22                              FACTUAL BASIS

23        15.  Defendant admits that defendant is, in fact, guilty of the

24   offense to which defendant is agreeing to plead guilty.  Defendant

25   and the USAO agree to the statement of facts provided below and agree

26   that this statement of facts is sufficient to support a plea of

27   guilty to the charge described in this agreement and to establish the

28   Sentencing Guidelines factors set forth in paragraph 17 below but is

                                    12

1    not meant to be a complete recitation of all facts relevant to the

2    underlying criminal conduct or all facts known to either party that

3    relate to that conduct.

4         Beginning no later than on or about April 9, 2017, through at

5    least July 17, 2019, defendant knowingly combined, agreed, and

6    conspired with multiple other persons ("coconspirators") to conduct

7    financial transactions into, within, and outside the United States

8    involving property that represented the proceeds of wire fraud.  The

9    conspiracy targeted numerous victims, including persons and

10   companies, and laundered and/or attempted to launder funds obtained

11   from them.  The victims of the conspiracy included the victim

12   identified in the Indictment as Victim Company 9.

13        Defendant admits that he conspired with coconspirators to

14   defraud victims and launder funds obtained from them in the manner

15   described in the Indictment, and admits the truth of the allegations

16   in the Indictment relating to his involvement in the schemes to

17   defraud Victim Company 9, as well as to defraud other intended

18   victims described below, and subsequently launder funds obtained from

19   them.  Defendant further admits that it was reasonably foreseeable to

20   defendant that the schemes intended to defraud these victims of the

21   amounts listed below.  Defendant knew that the property represented

22   the proceeds of some form of unlawful activity; that the transactions

23   were designed in whole or in part to conceal or disguise the nature,

24   location, source, ownership, and control of the proceeds; and that

25   the transactions with these criminally derived proceeds, at times,

26   exceeded $10,000.  Defendant became a member of the conspiracy

27   knowing of its objects and intending to help accomplish them.

28   Multiple members of the conspiracy took steps in furtherance of it,

1    including defendant, as described in the Indictment and further

2    below.

3         Defendant's coconspirators -- including co-defendant Chukwudi

4    Christogunus Igbokwe (2) -- would communicate with individuals

5    committing fraud ("fraudsters"), or middle-men for fraudsters, who

6    sought bank accounts into which they could fraudulently induce

7    victims to deposit funds.  Defendant was one such person -- a middle-

8    man -- who contacted co-defendant Igbokwe requesting bank accounts

9    that could be used to receive funds from fraudulent schemes,

10   including business email compromise ("BEC") frauds and romance scams.

11   BEC frauds typically involve a hacker gaining unauthorized access to

12   a business email account, and attempting to trick a victim into

13   making an unauthorized wire transfer.  Romance scams generally take

14   advantage of persons looking for romantic partners by targeting

15   victims on dating websites and other social media platforms.  The

16   fraudsters perpetrating these schemes were largely located outside

17   the United States.

18        Defendant communicated with coconspirators primarily through

19   messaging applications, such as WhatsApp, and phone calls, and also

20   used monikers such as "Mansion" and "Son of God" to conceal his

21   identity.

22        Defendant asked co-defendant Igbokwe for bank accounts that

23   could be used to receive funds fraudulently obtained from victims of

24   BEC fraud schemes and romance scams.  In addition to requesting a

25   bank account that could be used in furtherance of the scheme to

26   defraud Victim Company 9 (as discussed further below), defendant

27   requested other bank accounts that could be used to receive funds

28   from other intended victims of BEC fraud schemes and romance scams.

For instance, defendant made multiple such requests of co-defendant Igbokwe in May and June 2017 using the WhatsApp monikers "Mansion" and "Son of God," and, based on these chat messages, intended to fraudulently obtain approximately $1,314,337.68 from victims (including Victim Company 9). In response, co-defendant Igbokwe sent defendant the account information for multiple bank accounts opened by other persons, including, at a minimum, the business bank account name, the account number, and the routing number of the bank account. Some of these requests, and co-defendant Igbokwe's responses, are described in Overt Act Nos. 372 (relating to an intended $300,000 fraudulent payment) and 378 (relating to an intended $350,000 fraudulent payment), which defendant admits to be true.

Defendant also admits that he conspired with coconspirators to receive and launder funds to be obtained from Victim Company 9 (a victim of a BEC fraud scheme), and admits the truth of the allegations in the Indictment relating to his involvement in the schemes to defraud this victim and launder funds obtained from it. Defendant, specifically, admits the truth of the allegations of the Indictment in Overt Acts 121 through 140 (relating to Victim Company 9).

After Victim Company 9 wire transferred approximately $220,462.68 into a Bank of America account ending in 1004 (the "BOA 1004 Account") opened by a co-conspirator in the name of a fictitious business entity, co-defendant Igbokwe coordinated with other coconspirators to withdraw and move the funds, and then to further launder the funds. This laundering included sending the funds to other bank accounts used or controlled by coconspirators through wire transfers to other bank accounts opened in fictitious business names,

1   and withdrawing funds through cashier's checks, personal checks, or
2   as cash.

3       Co-defendant Igbokwe also coordinated with illicit money
4   exchangers who assisted in transferring money overseas to a Nigerian
5   bank account used by defendant.  To do this, co-defendant Igbokwe
6   coordinated withdrawal of funds from a U.S. bank account, depositing
7   those funds into a U.S. bank account used by an illicit money
8   exchanger.  The illicit money exchanger then used a Nigerian banking
9   application to transfer other funds in Naira, the currency of Nigeria
10  (₦), from his or her own Nigerian bank account to the Nigerian bank
11  account that defendant specified.  In that way, defendant was able to
12  obtain payment without funds being transferring overseas through wire
13  transfers.

14      Defendant admits that the money laundering described above was
15  sophisticated.

16      Prior to the FBI's intended arrest of defendant in this case on
17  August 22, 2019, defendant came to believe that he might be arrested
18  and decided to flee to Canada.  Defendant, therefore, traveled by
19  vehicle(s) from Georgia to northern New York State, and he crossed
20  the United States-Canada border on foot, on or about August 24, 2019.

21                          SENTENCING FACTORS

22      16.  Defendant understands that in determining defendant's
23  sentence the Court is required to calculate the applicable Sentencing
24  Guidelines range and to consider that range, possible departures
25  under the Sentencing Guidelines, and the other sentencing factors set
26  forth in 18 U.S.C. § 3553(a).  Defendant understands that the
27  Sentencing Guidelines are advisory only, that defendant cannot have
28  any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crime of
conviction.

17. Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

| | | |
|---|---|---|
| Underlying Offense Level: | 7 | [U.S.S.G. §§ 2S1.1(a)(1), 2B1.1(a)(1)] |
| Intended value of laundered funds more than $550,000 | +14 | [U.S.S.G. § 2S1.1(a)(1) and § 2B1.1(b)(1)(H)] |
| Fraud scheme outside the U.S. | +2 | [U.S.S.G. § 2S1.1(a)(1) and § 2B1.1(b)(10)(B)] |
| Conviction under 18 U.S.C. § 1956 | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Sophisticated laundering (including use of fictitious entities) | +2 | [U.S.S.G. § 2S1.1(b)(3)] |

Defendant and the USAO reserve the right to argue that
additional specific offense characteristics, adjustments, and
departures under the Sentencing Guidelines are appropriate.

18. Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

19. Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.  Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.  The right to persist in a plea of not guilty.

     b.  The right to a speedy and public trial by jury.

     c.  The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

     d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.  The right to confront and cross-examine witnesses against defendant.

     f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

     g.  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

     h.  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACK</u>

21.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to

18

appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

22. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

23. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 78 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release

imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $220,337.68.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

25.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO

choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

26. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

27. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

28. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's

obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss or not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment

22

privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

29.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

30.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

recommendations or the parties' agreements to facts or sentencing factors.

31. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

34.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

*Devon Myers*                                        May 24, 2021
ANIL J. ANTONY                                       Date
DEVON MYERS
Assistant United States Attorney


EMMANUEL ONYEKA UZOKA                                24/05/2021
Defendant                                           Date


CATHY MORRIS ALTERMAN                                5/24/21
Attorney for                                        Date
EMMANUEL ONYEKA UZOKA




<u>CERTIFICATION OF DEFENDANT</u>

I understand, read, and comprehend English, and I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly

1  discussed every part of it with my attorney.  I understand the terms

2  of this agreement, and I voluntarily agree to those terms.  I have

3  discussed the evidence with my attorney, and my attorney has advised

4  me of my rights, of possible pretrial motions that might be filed, of

5  possible defenses that might be asserted either prior to or at trial,

6  of the sentencing factors set forth in 18 U.S.C. § 3553(a), of

7  relevant Sentencing Guidelines provisions, and of the consequences of

8  entering into this agreement.  No promises, inducements, or

9  representations of any kind have been made to me other than those

10 contained in this agreement.  No one has threatened or forced me in

11 any way to enter into this agreement.  I am satisfied with the

12 representation of my attorney in this matter, and I am pleading

13 guilty because I am guilty of the charge and wish to take advantage

14 of the promises set forth in this agreement, and not for any other

15 reason.

16

17 _____          X 24/05/2021
   EMMANUEL ONYEKA UZOKA                    Date
18 Defendant

19

20               CERTIFICATION OF DEFENDANT'S ATTORNEY

21      I am EMMANUEL ONYEKA UZOKA's attorney.  I have carefully and

22 thoroughly discussed every part of this agreement with my client.

23 Further, I have fully advised my client of his rights, of possible

24 pretrial motions that might be filed, of possible defenses that might

25 be asserted either prior to or at trial, of the sentencing factors

26 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

27 provisions, and of the consequences of entering into this agreement.

28 To my knowledge: no promises, inducements, or representations of any

                              26

1  kind have been made to my client other than those contained in this

2  agreement; no one has threatened or forced my client in any way to

3  enter into this agreement; my client's decision to enter into this

4  agreement is an informed and voluntary one; and the factual basis set

5  forth in this agreement is sufficient to support my client's entry of

6  a guilty plea pursuant to this agreement.

7

8  CATHY MORRIS ALTERMAN                    Date   5/24/21
   Attorney for
9  EMMANUEL ONYEKA UZOKA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27